UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIVECAREER LTD,<br><br>   Plaintiff,<br><br>  v.<br><br>SU JIA TECHNOLOGIES LTD., DBA RESUMEGENIUS.COM, et al.,<br><br>   Defendants. | Case No. 14-cv-03336-JST<br><br>**ORDER DENYING MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MOTION TO TRANSFER**<br><br>Re: ECF Nos. 18, 42 |

Before the Court are Defendant Resume Companion LLC's Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative, for Transfer of Venue on the Basis of *Forum Non Conveniens*, ECF No. 18, and Defendant RGO Resume Technologies Ltd.'s Motion to Dismiss for Lack of Personal Jurisdiction Under FRCP 12(b)(2), ECF No. 42. For the reasons set forth below, the motions are denied.

**I. BACKGROUND**

On July 23, 2014, Plaintiff LiveCareer Ltd. ("LiveCareer") filed this action against Resume Companion LLC ("Resume Companion") and Su Jia Technologies Ltd., now known as RGO Resume Technologies Ltd. ("RGO"). ECF No. 1, ECF No. 46 at 1. LiveCareer, a Bermuda corporation, owns and operates websites that assist users with resumes, cover letters, and career decisions. Am. Compl., ECF No. 8 ¶¶ 2, 9, 11. It alleges that Defendants copied copyrighted text, as well as the look and feel of LiveCareer websites, and seeks injunctive relief, damages, and attorneys' fees for (i) copyright infringement under 17 U.S.C. § 101 *et seq.*, and (ii) unfair competition and false designation of origin under 15 U.S.C. § 1125(a). Id. ¶¶ 1, 19-20.

Defendant Resume Companion, a Delaware corporation, is based in Taipei, Taiwan, where "most, if not all, of the pertinent employees" reside. Decl. of Howard Chai, ECF No. 18-1 ¶ 2, 6-7, 9; Dep. of Jason Malm, ECF No. 49-3 at 91. It is unclear whether there is an office in Delaware

and whether any employees live or work there.  Compare Chai Decl. ¶ 2 with Malm Dep., ECF No. 49-3 at 107.  Jason Malm, a minority partner and a California resident, manages Google and Bing advertising campaigns for Resume Companion from an office located in San Francisco.  Malm Dep., ECF No. 49-3 at 11, 45.  Various websites, including Resume Companion job postings and the LinkedIn profile of Resume Companion's Chief Executive Officer, Howard Chai, indicate or have indicated in the past that Resume Companion has a San Francisco office.[1]  See ECF Nos. 29-2, 29-3, 29-4, 29-5, 29-7.  Resume Companion engages in business with third-party vendors located in California to support its business.  Malm Dep., ECF No. 49-4 at 182-185.  Many of its customers are California residents.  Id. at 174-175; see also ECF No. 29-11 at 5 (ResumeCompanion.com's terms of use, which provide specific instructions for California residents).

Defendant RGO is based in Nicosia, Cyprus, and "has no other offices worldwide."  Am. Compl. ¶ 4; Declaration of Anita Sondore, ECF No. 42-1 ¶ 2.  "ResumeCompanion.com is owned and operated by RGO."  ECF No. 44-2 at 2.  "ResumeGenius.com is owned by RGO."  ECF No. 44-3 at 4.  The terms of use for these websites state that they are "hosted in the United States" and "subject to U.S. state and federal law."  ECF Nos. 44-6 at 1, 44-7 at 1, 44-8 at 1, 44-9 at 1.  Users are advised that their personal information will be transferred to the United States.  ECF No. 44-8 at 1, 44-9 at 1.  The websites display testimonials from U.S. users, accept payments only in U.S. dollars, include the United States as the default preset country, and provide U.S. toll-free customer service numbers, which are available during business hours in the Eastern United States.   ECF Nos. 44-2 at 2; 44-6 at 1, 7; 44-7 at 3, 13; 44-10 at 1-3; 44-11 at 1; 44-12 at 1.  They state that their resumes are "[m]ade with pride in the USA."  ECF Nos. 44-11 at 1, 44-12 at 1.

On October 22, 2014, Resume Companion filed a Motion to Dismiss for Lack of Personal

---

[1] Resume Companion has filed evidentiary objections to two exhibits to the Declaration of Lance Soderstrom in support of LiveCareer's opposition to its motion to dismiss.  ECF No. 53-5.  Resume Companion contends that these exhibits are "unauthenticated third party documents that lack foundation and are not subject to any hearsay exception."  Id.  Resume Companion's objections do not comply with Civil Local Rule 7-3(c), which requires that "[a]ny evidentiary and procedural objections to the opposition must be contained within the reply brief or memorandum."  In any event, the Court does not rely on the documents at issue in deciding this motion.

Jurisdiction or in the Alternative, for Transfer of Venue on the Basis of *Forum Non Conveniens*. ECF No. 18. On January 8, 2015, RGO filed a Motion to Dismiss for Lack of Personal Jurisdiction Under FRCP 12(b)(2). ECF No. 42. LiveCareer opposes both motions. ECF Nos. 44, 49. It contends that this Court has both general and specific jurisdiction over Resume Companion in California, ECF No. 49, and has jurisdiction over RGO pursuant to Federal Rule of Civil Procedure 4(k)(2), ECF No. 44.

## II. LEGAL STANDARD

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008). The plaintiff need only make a prima facie showing of personal jurisdiction. Id. The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Boschetto, 539 F.3d at 1015.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)). "[B]oth the California long-arm statute and Rule 4(k)(2) ─ what is often referred to as the federal long-arm statute ─ require compliance with due process requirements." Id. (citing Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1128-29 (9th Cir. 2003) (California long-arm statute); Doe v. Unocal, 248 F.3d 915, 922 (9th Cir. 2001) (applying Rule 4(k)(2) as a federal long-arm statute)). Due process requires that the defendant must have "minimum contacts" with the forum state such that the assertion of jurisdiction in that forum "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

## III. MOTION TO DISMISS RESUME COMPANION LLC

LiveCareer asserts that this Court has both general and specific jurisdiction over Resume

Companion.

### A.    General Jurisdiction

"[A] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted). In these situations, "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [a foreign corporation] on causes of action arising from dealings entirely distinct from those activities." Id. Only in "an exceptional case" is general jurisdiction available outside a business's state of incorporation or principal place of business. Id. at 760, 761 n.19; see also Petzilla, Inc. v. Answer Innovation LLC, No. 14-cv-1354, 2014 WL 4744434, at *3 (N.D. Cal. Sept. 23, 2014). A corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." Daimler, 134 S. Ct. at 757.

Here, LiveCareer asserts that Resume Companion's "regular and significant contacts" with California are sufficient to support the exercise of general jurisdiction, ECF No. 49 at 8, but the evidence does not support this characterization. Resume Companion is incorporated in Delaware, and its principal place of business is in Taiwan. Chai Decl. ¶¶ 2, 6-7, 9; Malm Dep., ECF No. 49-3 at 91. The Supreme Court has recently explained that "the place of incorporation and principal place of business are [the] paradigm bases for general jurisdiction." Daimler, 134 S. Ct. at 760. And while the Daimler court also made clear that a corporation may be subject to general jurisdiction in a forum other than one of those two, id., Resume Companion does not own or rent property in California, is not registered with the Secretary of State of California, has no agent for service of process in California, and does not pay any California state taxes. Chai Decl. ¶¶ 3-4. Further, Resume Companion maintains and operates its website primarily in Taiwan. Id. ¶¶ 6-7.

To justify the exercise of general jurisdiction, LiveCareer points to Malm's residence and work in California and to online job postings and other websites, including the CEO's LinkedIn profile, referencing a California office. Id. at 4-8. The activities of one minority partner, who

4

1   manages Resume Companion's Google and Bing advertising campaigns from California, do not
2   suffice to make Resume Companion "at home" and subject to jurisdiction here for all purposes.
3   See Daimler, 134 S. Ct. at 751; see also CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066,
4   1074 (9th Cir. 2011) (standard to establish general jurisdiction is "exacting").

   The Court concludes that the exercise of general jurisdiction is not appropriate.

### B. Specific Jurisdiction

In the alternative, LiveCareer argues that specific personal jurisdiction is proper. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984)). The Ninth Circuit employs a three-part test to determine if a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Washington Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 672 (9th Cir. 2012); see also Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs, and if that burden is met the defendant must come forward with "a compelling case" that the exercise of jurisdiction would be unreasonable. Washington Shoe, 704 F.3d at 672 (citing CollegeSource, 653 F.3d at 1076.

#### 1. Purposeful Direction

The plaintiff may satisfy the first prong "by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." Id. In cases that sound in tort, courts typically use the "purposeful direction" or "effects" test, which requires that a defendant "have (1) committed an

1  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows
2  is likely to be suffered in the forum state." Id. (quoting Mavrix Photo, Inc. v. Brand Techs., Inc.,
3  647 F.3d 1218, 1228 (9th Cir. 2011)); see also Calder v. Jones, 465 U.S. 783 (1984).

4   "When evaluating purposeful direction in the context of websites, courts typically examine
5  the 'level of interactivity and commercial nature of the exchange of information that occurs on the
6  website to determine if sufficient contacts exist to warrant the exercise of jurisdiction.'"
7  Craigslist, Inc. v. Kerbel, No. 11-cv-3309-EMC, 2012 WL 3166798, at *4 (N.D. Cal. Aug. 2,
8  2012) (quoting Cybersell v. Cybersell, 130 F.3d 414, 416 (9th Cir. 1997)); see also Quigley v.
9  Guvera IP Pty Ltd., No. 10-cv-03569-CRB, 2010 WL 5300867, at *3-4 (N.D. Cal. Dec. 20, 2010).

10   Here, Resume Companion's interactive commercial website is sufficient to establish
11  purposeful direction. The website "facilitate[s] creating certain materials (e.g., resumes, cover
12  letters, etc.) using content that [users] provide," which may include "text, photographs, graphics,
13  videos, and other types of content." ECF No. 44-6 at 3-4. Users provide their contact information
14  and information about their work experience, education, and additional skills, and then pay for
15  Resume Companion's services through the website. ECF No. 44-11. LiveCareer has presented
16  evidence that California residents use these services. Malm Dep., ECF No. 49-4 at 174-175.
17  Indeed, Resume Companion's terms of use include specific directions for California residents.
18  ECF No. 29-11 at 5. Posting copyrighted text on a website directed to California users
19  foreseeably causes injury in California, in the form of lost sales and website traffic, customer
20  confusion, and the infringement of intellectual property rights. LiveCareer has therefore met the
21  first prong by establishing that Resume Companion committed an intentional act, expressly aimed
22  at California, that caused harm Resume Companion knew was likely to be suffered in California.
23  See Washington Shoe, 704 F.3d at 672.

24   The physical presence of Malm, who directs Resume Companion's Google and Bing
25  advertising campaigns from San Francisco, as well as Resume Companion's use of California-
26  based vendors to support its business and references to a San Francisco office in its job postings,
27  also suggest that the exercise of jurisdiction is appropriate because Resume Companion has
28  availed itself of this forum. See Craigslist, 2012 WL 3166798, at *5 ("Defendant's use of third-

United States District Court
Northern District of California

1    party California companies to process payments on its site lends further support to the claim that it
2    has purposefully availed itself of the forum.").

3          Resume Companion argues that this Court lacks specific personal jurisdiction because its
4    activities in California, and specifically Malm's management of Resume Companion's advertising
5    campaigns, are not "suit-related conduct," as required by the Supreme Court in Walden, 134 S. Ct.
6    at 1121. Walden does not address "whether and how a defendant's virtual 'presence' and conduct
7    translate into 'contacts' with a particular State," and therefore does not change the analysis of
8    Resume Companion's interactive website. See id. at 1125 n.9. The Court also finds unpersuasive
9    the argument that Resume Companion's advertising campaigns, which generate more than half of
10   the company's revenue, Malm Dep., ECF No. 49-4 at 50-51, are unrelated to this suit, in which
11   LiveCareer claims that "Defendants have commercially profited, and continue to commercially
12   profit . . . through their unauthorized copying of LiveCareer's Words and the LiveCareer
13   Websites, and LiveCareer has been and continues to be injured" as a result, Am. Comp. ¶ 23.

14         Resume Companion places significant weight on Advanced Tactical Ordnance Sys., LLC
15   v. Real Action Paintball, Inc., 751 F.3d 796 (7th Cir. 2014). That case involved a lawsuit between
16   competing makers of "PepperBalls" – projectiles filled with a pepper-spray-like irritant, which are
17   used by law enforcement officers and private security firms. Plaintiff Advanced Tactical filed suit
18   in its home state of Indiana, alleging intentional violations of the Lanham Act, 15 U.S.C. § 111 et
19   seq., common law trademark infringement and unfair competition, trade dress infringement, and
20   misappropriation of trade secrets. The Seventh Circuit determined that the district court lacked
21   jurisdiction, because there was virtually no connection between Real Action's allegedly infringing
22   activities, and the harm felt in Indiana – i.e., sales of Real Action's PepperBalls to Indiana
23   customers. Id. at 801. Specifically, the court found there was no evidence that either Real
24   Action's website or its e-mails to potential customers had any connection to its sales in Indiana.
25   Id. Advanced Tactical provided no evidence that any customer had seen the allegedly infringing
26   post on Real Action's website before placing an order, and the vast majority of Real Action's sales
27   were made before the post was placed on the website and in emails. Id. Similarly, there was no
28   evidence of consumer confusion – "nothing to suggest that any Indiana purchaser thought that

1  Advanced Tactical had started selling PepperBalls." Id. Thus, the court was left with no
2  litigation-specific conduct on which to base a finding of jurisdiction.[2]

3  This case is not like Advanced Tactical. Resume Companion does not argue that its sales
4  occurred before the alleged infringement or that its customers came from a source other than its
5  website – nor could it, since there is no evidence that it has any other customer channel.
6  Moreover, Resume Companion's links to California go "beyond simply operating an interactive
7  website accessible in the forum state and sending emails to people who may happen to live there."
8  Id. at 802. The website's terms of use provide specific instructions for California residents, and
9  many of its customers are in fact California residents. Malm manages Resume Companion's
10 Google and Bing advertising campaigns from his office in California, and these campaigns
11 produce more than half of Resume Companion's revenue. In short, unlike Advanced Tactical,
12 there is ample litigation-specific conduct within this district.

13 Accordingly, the Court finds that LiveCareer has satisfied the first part of the specific
14 jurisdiction test.

### 2. Arising out of Forum-Related Activity

16 The requirement that the claim must arise out of or relate to the defendant's forum-related
17 activities is also satisfied. Resume Companion's online activities have injured LiveCareer in
18 California. But for this conduct, this injury would not have occurred. Therefore, LiveCareer's
19 claims arise out of Resume Companion's California-related activities. See Panavision Int'l, L.P.
20 v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998); Portrait Displays, Inc. v. Speece, No. 04-cv-
21 1501-RMW, 2004 WL 1964506, at *6 (N.D. Cal. Sept. 3, 2004).

22 Resume Companion also suggests that LiveCareer cannot satisfy this element of the test
23 because it is a Bermuda corporation, and any alleged injury was suffered in Bermuda. The
24 argument is without foundation. Because Resume Companion's actions allegedly destroyed
25 "California-based value, a jurisdictionally significant amount" of economic harm took place in

---

[2] In Advanced Tactical, the Seventh Circuit noted that "[t]he Supreme Court has not definitively answered how a defendant's online activity translates into 'contacts' for purposes of the minimum contacts' analysis." 751 F.3d at 802. It therefore relied on case law from the Seventh Circuit in its discussion. See id.

1  California. <u>Mavrix</u>, 647 F.3d at 1231-32 (finding that economic loss was inflicted on copyright
2  holder not only in its principal place of business but also where the infringement and economic
3  loss occurred).

### 3. Reasonableness

Because LiveCareer satisfies the first two prongs of the specific jurisdiction test, the burden shifts to Resume Companion to bring "a compelling case" that the exercise of jurisdiction would be unreasonable. <u>Washington Shoe</u>, 704 F.3d at 672. The Court considers seven factors:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

<u>Panavision</u>, 141 F.3d at 1323 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-77 (1985)). "No one factor is dispositive; a court must balance all seven." <u>Id.</u>

In its motion, Resume Companion urges that it is unreasonable for this Court to exercise jurisdiction in California, and that Delaware would be a more appropriate forum. ECF No. 18 at 10-11. But although Resume Corporation is apparently incorporated in Delaware, and its CEO states that it has an office there, Chai Decl. ¶ 2, Resume Companion's Rule 30(b)(6) witness testified that there is no office in Delaware, that there never was an office in Delaware, and that there has only ever been a post office box there. Malm Dep., ECF No. 49-4 at 146. All of Resume Companion's owners and currently identified executives live in Taiwan or California. <u>Id.</u> at 64-65; <u>see also</u> Chai Decl. ¶ 9 ("most, if not all, of the pertinent employees and witnesses to this suit [] live in Taiwan"). Resume Companion does not reiterate its argument that Delaware is an appropriate forum in its reply. ECF No. 53 at 1, 7-8.

The Court concludes that Resume Companion has not met its burden to demonstrate that the exercise of jurisdiction would be unreasonable. The first factor weighs in favor of the plaintiff: Resume Companion has purposefully interjected itself into California's affairs by selling its online services to California residents, conducting its advertising campaigns from California, and using California-based vendors.

9

With respect to the second factor, Resume Companion has not shown that it would "suffer a large burden" in defending this action in California. ECF No. 18. Resume Companion's only argument on this point is that "executives would be required to attend trial across the country from the company's Delaware headquarters," but it has identified no executive or other witness who is located in Delaware. Id. Resume Companion's CEO states that "most, if not all" of the witnesses are in Taiwan. Chai Decl. ¶ 9. While travel from Taiwan to California may be inconvenient, the Court does not find that this factor weighs in the defendant's favor because the distance between Taiwan and Resume Companion's proposed Delaware forum is even greater than the distance between Taiwan and California.

The third factor, the extent of conflict with the sovereignty of the defendant's state "is not a concern" in this case, where the "federal analysis would be the same in either" Delaware or California. Panavision, 141 F.3d at 1323.

The Court concludes that the fourth factor, the forum state's interest in adjudicating the dispute, weighs in favor of LiveCareer. Although none of the parties are California citizens, LiveCareer alleges that Resume Companion sells infringing products to California citizens, that Resume Companion operates its advertising campaigns from this forum, and that LiveCareer has suffered injury in this forum. See Gucci Am., Inc. v. Wang Huoqing, No. 09-cv-05969-JCS, 2011 WL 31191, at *8 (N.D. Cal. Jan. 3, 2011).

The fifth factor, the most efficient judicial resolution of the controversy, is "no longer weighed heavily given the modern advances in communication and transportation," Panavision, 141 F.3d at 1323, but in any event this factor is neutral because there may be witnesses and evidence in California and in Taiwan.

Courts also generally give little weight to a plaintiff's inconvenience. Id. at 1324. Here, it may be inconvenient for Bermuda-based LiveCareer to litigate in California, but the plaintiff chose this forum, and the burden would not be significantly reduced if the action had been brought in Delaware.

Finally, Resume Companion has demonstrated that an alternative forum exists in Delaware. This factor weighs in Resume Companion's favor.

1    Balancing these factors, and noting in particular Resume Companion's purposeful
2 interjection into this forum and the apparent lack of any evidence or witnesses in the District of
3 Delaware, the Court concludes that that the exercise of jurisdiction over Resume Companion is
4 reasonable.

### D.    Transfer of Venue

Resume Companion originally requested that, if the Court were to determine that personal jurisdiction existed, it exercise its discretion pursuant to 28 U.S.C. § 1404 to transfer this action to the District of Delaware, where Resume Companion is domiciled.  ECF No. 18 at 11.  It abandoned this request in its reply, ECF No. 53, and confirmed at the hearing the request was withdrawn.

The motion to transfer is therefore denied as moot.

## IV.    MOTION TO DISMISS RGO RESUME TECHNOLOGIES LTD.

LiveCareer asserts that this Court has jurisdiction over Defendant RGO pursuant to Federal Rule of Civil Procedure 4(k)(2), "the federal long-arm statute."  Pebble Beach, 453 F.3d at 1158-59.

> The exercise of Rule 4(k)(2) as a federal long-arm statute requires the plaintiff to prove three factors.  First, the claim against the defendant must arise under federal law.  Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction.  Third, the federal court's exercise of personal jurisdiction must comport with due process.

Id. at 1159 (internal citations omitted).  Here, the parties agree that the first two factors are satisfied.  ECF No. 44 at 2; ECF No. 46 at 2-3.  RGO contends, however, that the exercise of personal jurisdiction in this case would not comport with due process.

The due process analysis under Rule 4(k)(2) is nearly identical to the personal jurisdiction analysis discussed above with respect to Resume Companion, "except here the relevant forum is the entire United States."  Pebble Beach, 453 F.3d at 1159; see also Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007).  Plaintiff does not contend that RGO is subject to general jurisdiction in the United States.  See ECF No. 44 at 2 (relying on RGO's statement that is "genuinely at home" in neither California nor the United States to argue that this

11

1   Court has jurisdiction pursuant to Rule 4(k)(2)).  Accordingly, the Court will apply the Ninth

2   Circuit's three-part test to determine whether RGO has sufficient minimum contacts to be subject

3   to specific personal jurisdiction in the United States:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Washington Shoe, 704 F.3d at 672.  The plaintiff bears the burden of satisfying the first two prongs, and if that burden is met then the defendant must come forward with "a compelling case" that the exercise of jurisdiction would be unreasonable.  Id.

RGO's contention that this test has been altered by Walden for the purposes of this motion is unpersuasive.  No party contends that RGO has any physical presence in the United States, and the Supreme Court made clear that Walden did not address "whether and how a defendant's virtual 'presence' and conduct translate into 'contacts.'"  Walden, 134 S.Ct. at 1125 n.9.

### A.   Purposeful Direction

As discussed above, the plaintiff may satisfy the first prong "by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum."  Washington Shoe, 704 F.3d at 672.  In cases that sound in tort, courts typically use the "purposeful direction" or "effects" test, which requires that a defendant "have (1) committed an intentional act, (2) expressly aimed at the forum [], (3) causing harm that the defendant knows is likely to be suffered in the forum."  Id. (citing Mavrix, 647 F.3d 1218, 1228 (9th Cir. 2011)); see also Calder, 465 U.S. 783.  "When evaluating purposeful direction in the context of websites, courts typically examine the 'level of interactivity and commercial nature of the exchange of information that occurs on the website to determine if sufficient contacts exist to warrant the exercise of jurisdiction.'"  Craigslist, 2012 WL 3166798, at *4 (quoting Cybersell, 130 F.3d at 416).

The Court is satisfied that RGO purposefully directed its activities at the United States. The terms of use of RGO's interactive websites, which facilitate the creation of resumes, cover letters, and other materials, state that they are "hosted in the United States" and subject to U.S. law. ECF Nos. 44-6 at 1, 44-7 at 1, 44-8 at 1, 44-9 at 1. Personal information submitted by website users is transferred to the United States. ECF No. 44-8 at 1, 44-9 at 1. In addition, the websites evidently target U.S. consumers, as they display U.S. customer testimonials, accept payment only in U.S. dollars, include the U.S. as the default preset country, and provide U.S. toll-free customer service numbers. ECF Nos. 44-2 at 2; 44-6 at 1, 7; 44-7 at 3, 13; 44-10 at 1-3; 44-11 at 1; 44-12 at 1. RGO's intentional act of posting copyrighted content on websites expressly aimed at the United States foreseeably caused harm within the United States.

At the hearing on this motion, RGO relied heavily on Walden and Advanced Tactical. As discussed in more detail above with respect to Resume Companion's motion, these cases do not change the Court's analysis. Walden expressly does not address "whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State." 134 S. Ct. 1121. Only virtual contacts between RGO and the United States are alleged here. Advanced Tactical does address online activities, but in that case the defendant's contacts to the forum were limited to maintaining an interactive website that could be accessed in Indiana and sending emails to a list that included Indiana residents. Here, the website targets U.S. consumers specifically.

**B.   Arising out of Forum-Related Activity**

The Court is also satisfied that LiveCareer's claims arise out of or relate to RGO's forum-related activities. LiveCareer alleges copyright infringement and unfair competition based on RGO's websites, which are directed at the United States. But for this conduct, LiveCareer would not have suffered the alleged harm. See Panavision, 141 F.3d at 1322.

**C.   Reasonableness**

Because LiveCareer satisfies the first two prongs of the specific jurisdiction test, the burden shifts to RGO to present a "compelling case" that the exercise of jurisdiction would be unreasonable. Washington Shoe, 704 F.3d at 672. As discussed above, the seven relevant factors are:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Panavision, 141 F.3d at 1323.  "No one factor is dispositive; a court must balance all seven." Id.

Here, the Court finds that the first factor weighs strongly in favor of LiveCareer.  RGO substantially and purposefully interjected itself into the United States by targeting U.S. consumers using websites hosted in the United States and subject to U.S. law.

With respect to the second factor, the burden on the defendant in defending in the forum, RGO states that it "would suffer a substantial and overwhelming burden given that its personnel would be required to attend trial halfway around the world from their homes and their families." ECF No. 46 at 6.  Although litigating in the United States may burden Cyprus-based RGO, and this factor therefore weighs in its favor, "modern advances in communications and transportation have significantly reduced the burden of litigating in a foreign country," and "unless the inconvenience is so great as to constitute deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction."  Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988); Panavision, 141 F.3d at 1323.

RGO contends the third factor, the extent of conflict with the sovereignty of the defendant's state, weighs in its favor because RGO is a Cyprus-based entity.  "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  Asahi Metal Industry Co. Ltd. v. Superior Court of California, Solano County, 480 U.S. 102, 115 (1987).  However, "this factor is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court."  Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.3d 1392, 1401-02 (9th Cir. 1986).  Here, although Cyprus has some interest in regulating the conduct of its corporations, LiveCareer's complaint only raises questions of U.S. law.  This factor is therefore "at best neutral."  AirWair Int'l Ltd. v. Schultz, 13-cv-01190-LHK, 2014 WL 5871580, at *10 (N.D. Cal. Nov. 12, 2014).

1    The fourth factor, the forum's interest in adjudicating the dispute, weighs in favor of
2 LiveCareer, because the United States has an interest in enforcing U.S. law, discouraging
3 copyright infringement, and protecting its citizens from consumer confusion.  See id.

4    Efficient resolution, the fifth factor, "is no longer weighed heavily given the modern
5 advances in communication and transportation."  Panavision, 141 F.3d at 1323.  Here, witnesses
6 may have to travel from Cyprus and Taiwan, ECF No. 42 at 10, so this factor weighs slightly in
7 RGO's favor.

8    Courts also give "little weight" to the plaintiff's inconvenience.  Id. at 1324.  This factor
9 weighs slightly in favor of LiveCareer because LiveCareer chose this forum, and it would be more
10 inconvenient for LiveCareer, a Bermuda corporation, to litigate this case in Cyprus than in the
11 United States.

12   RGO contends that this suit could have been brought in Cyprus.  However, LiveCareer
13 brings no claims under Cypriot law.  Both claims arise under U.S. law, and RGO has not
14 established that LiveCareer could assert its U.S. claims in Cyprus.  See AirWair, 2014 WL
15 5871580, at *11.  This final factor therefore weighs in favor of LiveCareer.

16   On balance, and particularly in view of the significant extent of RGO's purposeful
17 interjection into the United States, the Court concludes that the exercise of jurisdiction is
18 reasonable.

19   Because the Court denies RGO's motion to dismiss for lack of personal jurisdiction,
20 LiveCareer's request for jurisdictional discovery is moot.

21 **V.    CONCLUSION**

22   For the foregoing reasons, the motions to dismiss and motion to transfer are denied.

23   IT IS SO ORDERED.

24 Dated:  March 31, 2015

_____
JON S. TIGAR
United States District Judge